# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAGUFTABANU MOMIN, | Case No. 1:26-cv-02003-JLT-SAB-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a native of India who entered the United States without inspection in January 1997. (ECF No. 1 at 2.[1]) On December 20, 2004, Petitioner filed a Form I-485 application to adjust her status to that of a permanent resident, and the United States Citizenship and Immigration Services ("USCIS") approved the application. (ECF No. 1 at 2; ECF No. 10-1 at 7.) Thereafter, Petitioner filed an application for naturalization with USCIS, the application was approved, and Petitioner was naturalized as a U.S. citizen on August 1, 2014.[2] (ECF No. 1 at 2; ECF No. 10-1 at 7.)

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.
[2] Under Indian law, Indian citizens who naturalize to another country are automatically denaturalized as Indian citizens. Thus, when Petitioner became a naturalized U.S. citizen on August 1, 2014, she simultaneously denaturalized out of Indian citizenship. (ECF No. 1 at 2.)

Petitioner pleaded guilty in the United States District Court for the Northern District of Georgia to unlawful procurement of citizenship, in violation of 18 U.S.C. § 1425, and conspiracy, in violation of 18 U.S.C. § 371. The conspiracy related to the importation and sale of misbranded male enhancement pills containing undeclared active pharmaceutical ingredients. (ECF No. 10-1 at 44–54, 62–77.) On February 12, 2021, Petitioner was sentenced to an imprisonment term of eighteen months and three years of supervised release. (ECF No. 10-1 at 56–58.) On February 23, 2021, Petitioner's U.S. citizenship was revoked. (ECF No. 10-1 at 41–42.)

Petitioner completed her sentence and was released from the custody of the Federal Bureau of Prisons ("BOP") in or around August 2022. (ECF No. 1 at 2.) On January 27, 2025, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner pursuant to 8 U.S.C. § 1226(a). (Id.; ECF No. 10-1 at 7, 8, 22, 25.) On March 3, 2025, Petitioner filed a bond request. (ECF No. 1 at 2.) On March 14, 2025, an immigration judge ("IJ") denied bond, finding Petitioner was a danger to the community and flight risk. (ECF No. 1 at 3; ECF No. 10-1 at 11.) On April 14, 2025, Petitioner filed a motion to reconsider the bond denial with the Stewart Immigration Court in Georgia. (ECF No. 1 at 3; ECF No. 10-1 at 3.)

On July 10, 2025, Petitioner was transferred from the Stewart Detention Center to the Mesa Verde ICE Processing Center in Bakersfield, California. Jurisdiction was transferred to the Adelanto Immigration Court. (ECF No. 1 at 3.) On August 6, 2025, Petitioner filed a motion for a decision on the April 14, 2025 motion for reconsideration of the denial of bond with the Adelanto Immigration Court in California. On August 19, 2025, the Stewart Immigration Court in Georgia ruled on Petitioner's April 14, 2025 motion and denied reconsideration. (ECF No. 1 at 3; ECF No. 10-1 at 14–17.)

On October 4, 2025, Petitioner was transferred from the Mesa Verde ICE Processing Center to the California City Detention Facility where she is currently detained. (ECF No. 1 at 4, 15.) On October 24, 2025, Petitioner filed a bond request but withdrew the request on November 4, 2025 in light of the Department of Homeland Security ("DHS") filing a new charging document. (ECF No. 1 at 4.)

On January 28, 2026, Petitioner filed a new bond request, and on January 29, 2026, the immigration court set the hearing date for February 4, 2026. (ECF No. 1 at 4.) On February 3, 2026, DHS filed 251 pages of documents into the bond record. At the bond hearing on February 4, 2026, the IJ accepted the documents into the record, found Petitioner to be a flight risk and a danger to the community, and denied bond. (ECF No. 1 at 5; ECF No. 10-1 at 19.)

On March 12, 2026, Petitioner filed a petition for writ of habeas corpus and motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) The district judge denied the motion for TRO as untimely and "refer[red] the matter to the assigned magistrate judge for a determination on the merits." (ECF No. 6.) On April 7, 2026, Respondents filed an answer, and Petitioner filed a reply on April 14, 2026. (ECF Nos. 10, 11.)

## II.

## DISCUSSION

### A. Pre-Deprivation Hearing

In the second claim for relief, Petitioner asserts that her "continued detention without a pre-deprivation hearing before she was entered into ICE custody on January 27, 2025, violated due process" and that "for such hearings to comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community." (ECF No. 1 at 36.)

Petitioner contends that "[f]ederal district courts in California have repeatedly recognized the demands of due process and the limitations on DHS's authority to revoke a noncitizen's bond or parole set out in DHS's stated practice and *Matter of Sugay* both require a pre-deprivation hearing for a noncitizen on bond, like Ms. Momin before ICE re-detains her." (ECF No. 1 at 8.) However, the cases cited by Petitioner to support her contention are distinguishable from the instant matter because Petitioner was not detained by immigration officials, released on bond or recognizance, rearrested, and then detained pursuant to a mandatory detention provision. Here, Petitioner is detained pursuant to 8 U.S.C. § 1226(a).

> The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal. Section 1226 "distinguishes between two different categories of

aliens." *Jennings v. Rodriguez*, —— U.S. ——, 138 S. Ct. 830, 837, 200 L.Ed.2d 122 (2018). Section 1226(a) establishes the "default rule," *id.*, giving the Attorney General "broad discretion" over detention matters, *Nielsen v. Preap*, —— U.S. —— –, 139 S. Ct. 954, 956, 203 L.Ed.2d 333 (2019). This provision authorizes the Attorney General, in his discretion, to arrest and detain aliens "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

For these individuals, the Attorney General can either "continue to detain the arrested alien," or "may release the alien on (A) bond of at least $1,500 ... or (B) conditional parole." *Id.* § 1226(a)(1)–(2). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. 8 C.F.R. § 236.1(c)(8). The alien will be released if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.*

. . .

. . . Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19. If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his release. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *see also Matter of Barreiros*, 10 I. & N. Dec. 536, 537–38 (B.I.A. 1964). The IJ considers various factors in making this determination, including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country. *Matter of Guerra*, 24 I. & N. Dec. at 40. The IJ also decides whether bond or other conditions on the alien's release are appropriate. *Id.*; *see* 8 U.S.C. § 1226(a)(2). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. *See* 8 C.F.R. § 236.1(d)(3).

On top of this, an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances. *See* 8 C.F.R. § 1003.19(e). The same procedures apply to this new hearing, and its outcome is also appealable to the BIA. *See generally id.* § 1003.19. By contrast, § 1226(c) on its face offers no opportunity for release on bond. *See* 8 U.S.C. § 1226(c); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008).

Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196–97 (9th Cir. 2022).

"The detention of aliens during removal proceedings has long been upheld as a permissible exercise of the political branches' authority over immigration. Section 1226(a) offers substantial procedural protections to detained persons," and the Ninth Circuit has held that "§ 1226(a)'s procedures satisfy due process[.]" Rodriguez Diaz, 53 F.4th at 1193, 1213. Further, the Ninth Circuit rejected the argument that due process requires the government to justify

detention under § 1226(a) by clear and convincing evidence. Id. at 1210–12. Accordingly, the Court recommends denying the second claim for relief.

### B. Prolonged Detention Without Bond Hearing

In the third claim for relief, Petitioner asserts that she "has been detained for over 13 months without a bond hearing in violation of Due Process." (ECF No. 1 at 37.) Petitioner's assertion that she has not had a bond hearing is incorrect. As noted in the petition itself, Petitioner received bond hearings on March 14, 2025 and February 4, 2026. (ECF No. 1 at 4, 5.) Accordingly, the Court recommends denying the third claim for relief. To the extent that Petitioner's argument is that she has been detained without a constitutionally adequate bond hearing, the Court addresses the adequacy of Petitioner's February 4, 2026 bond hearing in section II(C)(3), infra.

### C. February 4, 2026 Bond Hearing

In the fourth claim for relief, Petitioner challenges the adequacy of the February 4, 2026 bond hearing held by the immigration court. Specifically, Petitioner argues that (1) DHS's last-minute entry of 251 pages of documents into the record the day before the bond hearing violated due process, and (2) the immigration court's cursory examination of the evidence before entry into the record and denying Petitioner bond violated due process. (ECF No. 1 at 22–27, 38–39.)

1. Jurisdiction

Respondents contend that "[t]o the extent the petition challenges the IJ's discretionary findings, those claims cannot be reviewed," citing to 8 U.S.C. § 1226(e). (ECF No. 10 at 5.) "Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011). Section "1226(e) does not strip a district court of its traditional habeas jurisdiction, 'bar constitutional challenge[s]' or preclude a district court from addressing a habeas petition 'challeng[ing] the statutory framework that permits [the petitioner's] detention without bail.'" Id. (alteration in original) (quoting Demore v. Kim, 538 U.S. 510, 516–17 (2003)). Accordingly, the Court finds that it has jurisdiction over the petition, and dismissal is not warranted on this ground.

5

2.   Exhaustion

Respondents argue that the petition should be dismissed for failure to exhaust administrative remedies. (ECF No. 10 at 5–8.)

> As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).
>
> However, because exhaustion is not jurisdictional, the requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

Singh v. Warden, No. 1:26-CV-00172-JLT-EPG, 2026 WL 1328508, at *3 (E.D. Cal. May 13, 2026).

Here, the appeal period has expired and thus, appealing to the BIA would be futile. Further, "district courts in the Ninth Circuit note that the unprecedented delays in the BIA appeals process necessarily mean that Petitioners will suffer irreparable injury if required to wait for a BIA decision before being permitted to file a habeas claim." Singh, 2026 WL 1328508, at *4 (citing Soriano v. Hernandez, No. 2:26-CV-00900-DGE, 2026 WL 969764 at *4 (W.D. Wash. Apr. 10, 2026); Scott v. Wamsley, No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025)). Accordingly, the Court recommends waiving the prudential exhaustion requirement in this instance.

3.   Analysis

"In order to prevail on a due process claim that he was denied a full and fair hearing, an

alien must also show prejudice—that his rights were violated in a manner so as potentially to affect the outcome of the proceedings." Vargas-Hernandez v. Gonzales, 497 F.3d 919, 926 (9th Cir. 2007) (internal quotation marks and citation omitted). See Prieto-Romero v. Clark, 534 F.3d 1053, 1066 (9th Cir. 2008) (subjecting due process violations in immigration proceedings to harmless error review); Singh v. Holder, 638 F.3d 1196, 1209 (9th Cir. 2011) (same).

Here, Petitioner asserts that DHS's last-minute submission of 251 pages of documents the day before the bond hearing and the immigration court's cursory examination of the evidence before entry into the record and denying Petitioner's request for bond violated due process. (ECF No. 1 at 22–27, 38–39.) Petitioner argues that "[d]ue to the extremely late submission, Petitioner's counsel at that hearing had no opportunity to contest the improper entry of evidence," (ECF No. 1 at 24), but the "Federal Rules of Evidence do not apply strictly in immigration removal proceedings." Singh, 638 F.3d at 1209 ("reject[ing] Singh's argument that his due process rights were violated when the IJ admitted his unauthenticated RAP sheet into evidence").

Petitioner also argues that "[d]ue to Petitioner's counsel's prevailing on their September 8, 2025, argument that Respondents had violated Ms. Momin's due process rights with improper service, thus justifying another constitutionally compliant hearing, it strains credulity to think that Respondents were not aware that last-minute service is violative of due process." (ECF No. 1 at 24.) The "September 8, 2025, argument" appears to have concerned a new charging document and master calendar hearing. (Id. at 4.) "Bond hearings and removal hearings are separate proceedings and serve separate purposes[,]" and "[b]ond hearings . . . are far less formal than removal hearings." Joseph v. Holder, 600 F.3d 1235, 1247, 1243 (9th Cir. 2010).

Further, Petitioner does not elaborate on how earlier submission of DHS's bond documents or a more detailed examination of the evidence by the immigration judge would have potentially affected the outcome of the bond hearing. In the order denying bond, the IJ stated:

> [Petitioner] is a danger to the community. [Petitioner] was convicted in District Court of conspiracy to deliver undeclared drugs with active pharmaceuticals. In the alternative, [Petitioner] is a significant flight risk such that no amount of bond or conditions would ensure her future court appearances. [Petitioner] has engaged in a pattern of disrespect for US laws. She was convicted of procuring

naturalization unlawfully. The deception continued on with obtaining a driver's license under someone else's identity. Further, she has presented inconsistent information regarding her familial ties.

(ECF No. 10-1 at 19.) Petitioner does not point to any documents submitted that the IJ overlooked in her "cursory" examination and does not allege that the IJ improperly relied on any unreliable evidence. Earlier submission of the DHS bond documents presumably would have allowed Petitioner and her counsel additional time to prepare and gather evidence, but Petitioner does not identify what additional evidence, testimony, or argument she and her counsel were prevented from presenting due to the last-minute submission of the DHS documents. As Petitioner has failed to show any prejudice, the Court recommends denying the fourth claim for relief.

### D. Substantive Due Process

In the first claim for relief, Petitioner asserts that she "is not a flight risk or danger to the community," her "detention is punitive as it bears no 'reasonable relation' to any legitimate government purpose," and thus, her detention is "unjustified and lawful" and "in violation of the Due Process Clause of the Fifth Amendment." (ECF No. 1 at 35.)

"As an initial matter, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." United States v. Salerno, 481 U.S. 739, 746 (1987) (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). "A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing Salerno, 481 U.S. at 747). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Torres, 995 F.3d at 708 (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)).

In Martinez Leiva v. Becerra, the petitioner raised a substantive due process claim, arguing that his detention had "become unconstitutionally punitive, as: (1) it does not serve any nonpunitive governmental interest because he is not a flight risk or danger to his community; (2) it is excessive in relation to any governmental interest; and (3) its duration exceeds the bounds of

8

due process." Martinez Leiva v. Becerra, No. 23-CV-02027-CRB, 2023 WL 3688097, at *5 (N.D. Cal. May 26, 2023) (footnote omitted). The district court rejected the petitioner's arguments, stating "that is what bond hearings are for." Id.

Here, as set forth in section II(C)(3), supra, Petitioner has not demonstrated that her February 2, 2026 bond hearing was constitutionally inadequate. At the hearing, the IJ determined that Petitioner is a danger to the community based on her conviction for "conspiracy to deliver undeclared drugs with active pharmaceuticals" and "a significant flight risk" given "a pattern of disrespect for US law," including conviction for "procuring naturalization unlawfully" and "obtaining a driver's license under someone else's identity." (ECF No. 10-1 at 19.) "The detention of aliens during removal proceedings has long been upheld as a permissible exercise of the political branches' authority over immigration," Rodriguez Diaz, 53 F.4th at 1193, and as the IJ has concluded that Petitioner is a danger and flight risk,[3] the Court recommends denying the first claim for relief. See Romero-Romero v. Wofford, No. 1:24-CV-00944 JLT SKO (HC), 2025 WL 3154399 (E.D. Cal. Nov. 12, 2025) (rejecting substantive due process claim of petitioner detained under § 1226(c) for three years who had been afforded bond hearings, bond reviews, and appeals), adopting report and recommendation as modified, 2025 WL 391861 (E.D. Cal. Feb. 4, 2025).

### III.

### RECOMMENDATIONS

Based on the foregoing, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file

---

[3] To the extent that Petitioner challenges the IJ's dangerousness and flight risk determination, a federal court applies an abuse of discretion standard under which "we cannot reweigh evidence ... [but] can [only] determine whether the [IJ] applied the correct legal standard." Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (last alteration added) (internal quotation marks omitted) (quoting Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014)). Petitioner does not assert, and there is nothing in the record indicating, that the IJ applied an incorrect legal standard.

written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 28, 2026**

STANLEY A. BOONE
United States Magistrate Judge